## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LYNDA ANN HAGEN,<br><br>        Plaintiff,<br><br>    v.<br><br>EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION LLC,<br><br>        Defendants. | Civil Action No. 2:26-cv-10751 |

## COMPLAINT

Lynda Ann Hagen ("Plaintiff" or "Ms. Hagen") brings this action on an individual basis, against Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") Trans Union LLC, ("Trans Union"), (collectively, "Credit Bureau Defendants") and states as follows:

### INTRODUCTION

1.     Plaintiff, an identity theft victim, brings this action against Defendants for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, et seq. ("FCRA").

### JURISDICTION AND VENUE

2.     Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

3.    Venue is proper in this District under to 28 U.S.C. §1391(b).

## PARTIES

4.    Plaintiff Lynda Ann Hagen ("Plaintiff") resides in Sturgis, Michigan, and qualifies as a "consumer" as defined and protected by the FCRA.

5.    Defendant Equifax Information Services, LLC ("Equifax") is a consumer reporting agency with a principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

6.    Defendant Experian Information Solutions, Inc. ("Experian") is a consumer reporting agency with a principal place of business located at 475 Anton Boulevard Costa Mesa, California.

7.    Defendant Trans Union LLC ("Trans Union") is a consumer reporting agency with a principal place of business located at 555 West Adam Street, Chicago IL, 60661.

## FACTUAL ALLEGATIONS

### Plaintiff Directly Communicates with Furnishers

8.    In or around April 2025, Plaintiff requested and obtained copies of her consumer credit reports from Defendants Experian and Trans Union.

9.    Upon reviewing her credit reports, Plaintiff was shocked that there are accounts from the following furnishers which are unknown and unfamiliar to Plaintiff:

    a.  Credit Collection Services;

    b.  Seventh Avenue;

    c.  Verizon Wireless; and

    d.  Colony/Ginnys

    e.  MOHELA

10. Plaintiff did not open, authorize, apply for, benefit from, or otherwise consent to the creation of any of the above-referenced accounts.

11. After identifying these unauthorized accounts, Plaintiff directly contacted the furnishers to dispute the accounts and obtain clarification.

12. On or about June 2, 2025, Plaintiff contacted MOHELA regarding the student loan accounts.

13. Plaintiff requested and obtained a copy of a Master Promissory Note dated October 17, 2022, which she did not execute or authorize.

14. On September 18, 2025, Plaintiff again contacted MOHELA. A representative confirmed that the account consisted of two credit lines: a Direct Subsidized Stafford Loan and a Direct Unsubsidized Stafford Loan, approved in November 2022.

15. During that call, MOHELA advised that the account was approximately 119 days past due with a balance exceeding $1,700, and that the phone number and email address associated with the account were not recognized by Plaintiff.

16.     On or about June 10, 2025, Plaintiff contacted Verizon regarding the reported Verizon Wireless account. Verizon refused to locate the account using Plaintiff's Social Security number and required an account number and PIN to provide further information.

17.     Plaintiff subsequently visited the Verizon retail branch in person but was unable to obtain meaningful assistance.

18.     On or about August 25, 2025, Plaintiff again contacted Verizon. Although full verification was not possible without a PIN, Plaintiff was advised that the email address associated with the account was not her own.

19.     Plaintiff did not open or authorize the reported Verizon mobile or internet service account.

20.     Plaintiff contacted Colony Brands regarding the retail accounts reported under Ginny's, Seventh Avenue, and Montgomery Ward.

21.     Colony Brands confirmed that the phone number and email address associated with the account were not recognized by Plaintiff.

22.     Colony further confirmed that the accounts were opened online or by telephone but could not provide specific application details.

23.     Plaintiff also contacted Williams & Fudge, Inc., which was reporting a collection account relating to Southern New Hampshire University.

24.     The representative confirmed that the account related to online

educational services and that Williams & Fudge was acting as a third-party collector.

25. The phone number and email address associated with the account were not recognized by Plaintiff.

**Plaintiff Obtains Her Credit Reports and Reconfirms the Reporting of the Fraudulent Accounts in Plaintiff's Consumer Files**

26. In or around August 2025, Plaintiff again obtained copies of her consumer files from the Credit Bureau Defendants to determine the scope of the identity theft and review the information being published about her.

27. Upon reviewing the contents of the August 2025 credit files/reports, Plaintiff was bewildered by the appearance of several pieces of information that did not belong to Plaintiff at all.

28. Specifically, the Credit Bureau Defendants were reporting the following Fraudulent Accounts that do not belong to Plaintiff:

    a. Credit Collection Services
       Account Number: XXXX423
       Collection Reported: 08/05/2025
       Amount: $523
       OriginaL Creditor: Frontier Communications Corp.

    b. Williams & Fudge Inc.
       Account Number: XXXX4014
       Collection Reported: 08/01/2025
       Amount: $960
       Original Creditor: Southern New Hampshire University

    c. Ginny's Closed
       Account Number: XXX9630
       Status: Charge Off

Date Opened: 08/11/2023
Balance: $539

d. Missouri Higher Education Loan
Account Number: XXXX0314
Status: Pay As Agreed
Date Opened: 11/10/2022
Balance: $772

e. Missouri Higher Education Loan
Account Number: XXXX0314
Status: Pay As Agreed
Date Opened: 11/10/2022
Balance: $955

f. Verizon Wireless
Account Number: 589365870XXXX
Date Opened: 05/05/2020
Balance: $680

g. Seventh Avenue (reported by Experian and Trans Union)
Account Number: 573313252XXXX
Date Opened: August 2023
Status: Account charged off

29. Plaintiff did not apply for, open, or authorize any of the foregoing accounts.

30. Defendant Experian was also reporting name variations, including Lynda Haggen which does not accurately reflect Plaintiff's legal and true name.

31. Additionally, Experian and Equifax associated Plaintiff with the following addresses, none of which Plaintiff has ever resided at or used in connection with any credit transaction:

a. 25671 Fawn River Rd, Sturgis, MI 49091;

b. 500 N 4th ST, Sturgis, MI 49091; and

c. 17 Rice ST Apt G, Danvers MA 01923-2759.

32. Further, Defendants Experian and Trans Union were also reporting the following account inquiries, with whom Plaintiff did not have or otherwise initiate an account relationship:

a. Capital One, June 25, 2025.

b. JPBCB Card, May 11, 2024.

c. Syncb/ Amazon, May 11, 2024.

d. JPMCB Card,  March 14, 2024.

e. DiscoverC, Dec 8, 2023.

f. Google North America, Inc., Nov 15, 2023.

g. WF CRD SWC, July 7, 2025

33. Plaintiff did not apply for credit with, or have any relationship with, the foregoing entities.

34. Plaintiff did not authorize any of the foregoing entities to obtain her consumer report from Experian or TransUnion on the dates referenced above, and she did not initiate any transaction or relationship that would permit such access. Experian and TransUnion nonetheless furnished Plaintiff's consumer report without a permissible purpose, in violation of 15 U.S.C. § 1681b(a).

35. On or about October 23, 2025, worried with the presence of the

Fraudulent Accounts on her credit reports, Plaintiff submitted a formal complaint to the Federal Bureau of Investigation's Internet Crime Complaint Center (IC3), detailing the unauthorized use of her personal identifying information, fraudulent enrollment, and related digital account compromise.

<b>Plaintiff's Dispute to the CRA Defendants November 2025</b>

36.    On or about November 7, 2025, Plaintiff submitted written disputes to all three Credit Bureau Defendants, disputing each of the fraudulent accounts and fraudulent information appearing on her credit files.

37.    Plaintiff provided sufficient information to identify her credit file and sufficient information to support her dispute.

38.    Plaintiff requested that the identity theft information be blocked from her credit file.

<b>Defendant Equifax's Unreasonable Dispute Reinvestigation</b>

39.    Upon information and belief, Defendant Equifax received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

40.    On or about December 5, 2025, Plaintiff received written reinvestigation results from Defendant Equifax in response to her identity theft dispute.

41.    In its response, Equifax deleted two previously reported addresses that Plaintiff had identified as inaccurate and unfamiliar to her.

42.     However, Equifax did not remove all disputed Fraudulent Accounts. Instead, several accounts that Plaintiff expressly identified as fraudulent were reported as "verified" and "updated," including the Credit Collection Services account, two Missouri Higher Education loan accounts, Seventh Avenue account, and a Verizon Wireless account.

43.     Defendant Equifax failed to reasonably review all the information provided to it by Plaintiff.

44.     Defendant Equifax failed to reasonably reinvestigate Plaintiff's November 7, 2025, dispute and failed to block the identity theft information.

45.     Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

46.     Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

**Defendant Trans Union's Unreasonable Dispute Reinvestigation**

47.     Upon information and belief, Defendant Trans Union received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

48.     On or about November 18, 2025, Defendant Trans Union sent an email to Plaintiff stating that Trans Union had received her dispute and was awaiting responses from the furnishers.

49.     Upon information and belief, Defendant Trans Union sent Furnishers Verizon Wireless, MOHELA and Seventh Avenue, an automated credit dispute verification ("ACDV") pursuant to Plaintiff's November 2025 dispute to Defendant Trans Union.

50.     On or about December 5, 2025, Trans Union mailed Plaintiff a letter acknowledging her dispute and enclosing a copy of her credit report. The correspondence did not clearly state the outcome of the reinvestigation, did not specify which accounts were deleted, verified, modified, or blocked, and did not indicate that the identity theft information had been suppressed. The disputed fraudulent accounts remained reflected in the Trans Union report.

51.     Thereafter, on or about January 27, 2026, Plaintiff obtained an updated Trans Union consumer report.

52.     Upon review, Plaintiff confirmed that several of the fraudulent accounts she had disputed continued to be reported, including the Verizon Wireless account, two Missouri Higher Education loan accounts, and the Seventh Avenue account.

53.     Defendant Trans Union failed to reasonably review all the information provided to it by Plaintiff.

54. Defendant Trans Union failed to reasonably reinvestigate Plaintiff's November 10, 2025 dispute and failed to block the identity theft information.

55. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

56. Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

### Defendant Experian's Unreasonable Dispute Reinvestigation

57. Upon information and belief, Defendant Experian received Plaintiff's dispute and request that identity theft information be blocked from her credit file.

58. On December 4, 2025, Plaintiff received an email from Experian advising that the dispute investigation had been completed and directing her to review the results online.

59. Upon information and belief, Defendant Experian sent Furnishers Verizon Wireless, MOHELA and Seventh Avenue, an automated credit dispute verification ("ACDV") pursuant to Plaintiff's November 2025 dispute to Defendant Experian.

60. Experian's investigation resulted in the deletion of some disputed

information. However, Experian reported that several other disputed accounts. including the Verizon Wireless account, two MOHELA student loan accounts, and the Seventh Avenue account were verified.

61.     On December 18, 2025, Plaintiff received a subsequent email from Experian again advising that her dispute results were available for review.

62.     On January 28, 2026, Plaintiff obtained an updated copy of her Experian consumer report.

63.     Upon review, Plaintiff confirmed that although certain name variations had been deleted, at least one inaccurate address continued to be reported.

64.     The updated report further reflected that while some disputed accounts were removed, the Verizon Wireless account, the Seventh Avenue account, and both MOHELA student loan accounts continued to be reported.

65.     However, the Fraudulent Account was not removed or blocked from her credit file.

66.     Defendant Experian failed to reasonably reinvestigate Plaintiff's November 2025, dispute and failed to block the identity theft information.

67.     Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation with respect to the disputed information, failing to review all relevant information available to it, and failing to recognize that the disputed charges were the product of identity theft.

68.     Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

## PLAINTIFF'S DAMAGES

69.     Plaintiff did exactly what she should have done upon realizing she was the victim of identity theft.

70.     Plaintiff filed an IC3 report.

71.     Plaintiff disputed with the Credit Bureau Defendants in 2025.

72.     Plaintiff immediately identified herself as an identity theft victim and requested from the Credit Bureau Defendants block the account information that was the product of identity theft.

73.     The Credit Bureau Defendants failed to block the Fraudulent Accounts that was the product identity theft despite Plaintiff's disputes.

74.     Instead, the Credit Bureau Defendants repeatedly disregarded Plaintiff's credible disputes. Often responding to a victim of identity theft that the furnishers of the account that were the product of identity theft had verified the account as accurate.

75.     The Credit Bureau Defendants understand it is often the case that an identity thief's activities, often designed intentionally to fabricate information into a credit file, will cause false information to appear on an identity theft victim's credit

file.

76. Despite Plaintiff's disputes to the Credit Bureau Defendants that the Loan was the product of fraud, and she was a victim of identity theft, Defendants Equifax, Experian, and Trans Union hardly wavered in their refusals to block the information.

77. As a direct result of Defendant Equifax's ardent refusal to block the Fraudulent Accounts, which were a product of identity theft, Defendant Equifax has continued to report and publish the disputed accounts in Plaintiff's consumer file, that were the product of identity theft.

78. As a direct result of Defendant Experian's ardent refusal to block the Fraudulent Accounts, which were a product of identity theft, Defendant Experian has continued to report and publish the disputed accounts in Plaintiff's consumer file, that were the product of identity theft.

79. As a direct result of Defendant Trans Union's ardent refusal to block the Fraudulent Accounts, which were a product of identity theft, Defendant Trans Union has continued to report and publish the disputed accounts in Plaintiff's consumer file, that were the product of identity theft.

80. Due to Defendants' ardent refusals to comply with their respective obligations pursuant to the FCRA, Plaintiff was forced to obtain legal advice and counsel, for which she incurred attorney's fees.

81. Defendants' conduct has caused Plaintiff extreme and ongoing stress and anxiety. Plaintiff has suffered sleepless nights, frustration, worry, and ultimately felt utterly hopeless that Defendants would ever properly reinvestigate her disputes.

82. At all times pertinent hereto, Defendants were acting by and through their agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

83. At all times pertinent hereto, the conduct of Defendants, as well as that of their representative agents, servants, and/or employees, was intentional, willful, reckless, grossly negligent and in utter disregard for federal law and the rights of Plaintiff herein.

84. Plaintiff's ongoing stress and anxiety over the situation, and after repeatedly receiving one non-responsive communication after another from Defendants, Plaintiff feels a surge of panic each time she receives another communication from Defendants. Her ongoing stress and anxiety regarding the situation have affected her and her relationships negatively.

85. The Credit Bureau Defendants' policies and procedures clearly establish willfulness, wantonness, and utter and reckless disregard for the rights and interests of consumers and led directly to the injuries of Plaintiff as described in this complaint.

86.    As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to the Fraudulent Accounts that were the product of identity theft.

87.    In December 2025, Plaintiff was denied multiple credit applications, including applications with Wells Fargo, Celtic Bank (Indigo Mastercard), Capital One, American Express, and Pentagon Federal Credit Union. The adverse action notices reflect that the decisions were based in whole or in part on consumer reports issued by TransUnion, Experian, and Equifax. Plaintiff was assigned very low credit scores and was cited for serious delinquencies, derogatory events, excessive inquiries, and debt-related factors that were the product of identity theft reporting in her consumer files.

88.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted

and questioned and disbelieved by the Defendants.

**COUNT I**
**15 U.S.C. § 1681e(b)**
**Failure to Follow Reasonable Procedures to**
**Assure Maximum Possible Accuracy**
**(Defendants Equifax, Experian, and Trans Union)**

89.    Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein.

90.    The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

91.    On numerous occasions, the Credit Bureau Defendants prepared patently false consumer reports concerning Plaintiff.

92.    Despite actual and implied knowledge that Plaintiff was the victim of identity theft, the Credit Bureau Defendants readily and repeatedly sold such false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness by suggesting that Plaintiff was responsible for the Fraudulent Accounts and delinquent obligations that she did not incur.

93.    Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained

concerning Plaintiff.

94.   Defendant Experian violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

95.   Defendant Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiff.

96.   As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to the Fraudulent Accounts that were the product of identity theft.

97.   In December 2025, Plaintiff was denied multiple credit applications, including applications with Wells Fargo, Celtic Bank (Indigo Mastercard), Capital One, American Express, and Pentagon Federal Credit Union. The adverse action notices reflect that the decisions were based in whole or in part on consumer reports

issued by TransUnion, Experian, and Equifax.

98.    Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

99.    The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering Defendants Equifax, Experian, and Trans Union liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

100.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT II**
**15 U.S.C. § 1681i**
**Failure to Perform a Reasonable Reinvestigation**
**(Defendants Equifax, Experian, and Trans Union)**

101.   Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully set forth herein at length.

102.   The FCRA mandates that a CRA conduct an investigation of the

accuracy of information "[I]f the completeness or accuracy of any item of information contained in a consumer's file" is disputed by the consumer. See 15 U.S.C. § 1681i(a)(1). The Act imposes a 30-day limitation for the completion of such an investigation. Id.

103. The FCRA provides that if a CRA conducts an investigation of disputed information and confirms that the information is in fact inaccurate or is unable to verify the accuracy of the disputed information, the CRA is required to delete that item of information from the consumer's file. See 15 U.S.C. § 1681i(a)(5)(A).

104. In November 2025, Plaintiff disputed the inaccurate information with the Credit Bureau Defendants and requested that they correct and/or delete a specific item in her credit file that is patently inaccurate, misleading, and highly damaging to her, namely, the Fraudulent Accounts that were the product of identity theft which was a very stressful situation for the Plaintiff.

105. Plaintiff disputed the identity theft information to the Credit Bureau Defendants in November 2025, but to no avail.

106. In support of her disputes, Plaintiff provided documentation sufficient to verify her identity and current address.

107. Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Equifax conducted virtually no investigations of Plaintiff's disputes, or such investigations were so

shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

108.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Experian conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

109.   Despite actual and implied knowledge that Plaintiff was the victim of identity theft, and in response to Plaintiff's disputes, Defendant Trans Union conducted virtually no investigations of Plaintiff's disputes, or such investigations were so shoddy as to allow patently false and highly damaging information to remain in Plaintiff's credit file.

110.   Plaintiff expended resources in the form of time and money to repeatedly dispute the same account with the Credit Bureau Defendants, repeatedly.

111.   The Credit Bureau Defendants' repeated refusals to block the disputed Fraudulent Account provided credibility to that account, forcing an identity theft victim to be repeatedly confronted with the evidence of identity theft.

112.   Defendant Equifax violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the

disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

113. Defendant Experian violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

114. Defendant Trans Union violated 15 U.S.C. § 1681i by failing to conduct a reasonable investigation to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiff; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiff's credit file.

115. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit

rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to the Fraudulent Accounts that were the product of identity theft.

116. In December 2025, Plaintiff was denied multiple credit applications, including applications with Wells Fargo, Celtic Bank (Indigo Mastercard), Capital One, American Express, and Pentagon Federal Credit Union. The adverse action notices reflect that the decisions were based in whole or in part on consumer reports issued by TransUnion, Experian, and Equifax.

117. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted and questioned and disbelieved by the Credit Bureau Defendants.

118. The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were

negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

119.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

**COUNT III**
**15 U.S.C. § 1681c-2**
**Failure to Block Identity Theft Information**
**(Defendants Equifax, Experian and Trans Union)**

120.   Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth herein at length.

121.   Defendant Equifax violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

122.   Defendant Experian violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

123.   Defendant Trans Union violated 15 U.S.C. § 1681c-2 by failing to block the reporting of the disputed information which was due to identity theft from Plaintiff's file.

124.   Plaintiff repeatedly submitted ample evidence of the fact that she was an identity theft victim. Plaintiff further supported the fact that she was an identity theft victim by providing to the Credit Bureau Defendants copies of the documents

sufficient to verify Plaintiff's personal information.

125. The Credit Bureau Defendants should have blocked the identity theft information but failed to do so at every turn.

126. As a result of Defendants' conduct, action, and inaction, Plaintiff suffered damage by loss of ability to purchase and benefit from her good credit rating; detriment to her credit rating; reduced overall creditworthiness; the expenditure of time and money disputing and trying to remove an open and derogatory loan account that was the product of identity theft; and, the expenditure of labor and effort disputing and trying to the Fraudulent Accounts that were the product of identity theft.

127. In December 2025, Plaintiff was denied multiple credit applications, including applications with Wells Fargo, Celtic Bank (Indigo Mastercard), Capital One, American Express, and Pentagon Federal Credit Union. The adverse action notices reflect that the decisions were based in whole or in part on consumer reports issued by TransUnion, Experian, and Equifax.

128. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish and pain, sleep loss, reputational damage, humiliation, stress, anger, frustration, shock, violation of Plaintiff's right to privacy, fear, worry, anxiety, and embarrassment attendant to being a victim of identity theft whose veracity is doubted

and questioned and disbelieved by the Credit Bureau Defendants.

129.   The Credit Bureau Defendants' conduct, actions, and inactions were willful, rendering the Credit Bureau Defendants liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Credit Bureau Defendants were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

130.   Plaintiff is entitled to recover attorneys' fees and costs from the Credit Bureau Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter a judgment awarding Plaintiff actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs and awarding Plaintiff such other and furth relief as the Court may deem appropriate and proper.

## JURY DEMAND

Plaintiff hereby demands jury trial on all issues so triable.

Dated: March 5, 2026

*/s/ Nisan Zaghi*
Nisan Zaghi, NY Bar # 5711072
CONSUMER ATTORNEYS
68-29 Main Street

Flushing NY 11367
T: (718) 925-0276
F: (718) 247-8020
E: nzaghi@consumerattorneys.com

*Attorneys for Plaintiff,*
*Lynda Ann Hagen*